UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| OFFICEMAX INCORPORATED, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Civil No. 9-631-P-W |
| DENIS SOUSA, et al., | ) |
| Defendants | ) |

**ORDER ON MOTION TO REOPEN**

Defendants were given leave to file a motion to reopen the Rule 30(b)(6) deposition of Thomas Polcaro, based upon defendants' counsel's claim that plaintiff's counsel's misconduct had forced the early termination of the deposition. (See Doc. No. 92, ¶ 4, Rep. of Tel. Conf.) The parties informed the court that the deposition had been videotaped and posited I would have to watch the videotape in order to determine which counsel's "misconduct" had led to the suspension of the deposition. Defendants have now filed a motion to reopen not only that deposition, but also the depositions of two other witnesses, James Fuller, and Deneen Morrotta, two OfficeMax employees who were deposed in their individual capacities, but also, as to Fuller, as a Rule 30(b)(6) deponent on the issue of item 18 on the deposition notice, the "reorganization process." I will discuss each deponent in turn.

*<u>Deneen Morrotta</u>*

Deneen Morrotta was deposed on August 16, 2010. She was a declarant who submitted an affidavit in support of OfficeMax's Motion for Preliminary Injunction filed February 24, 2010. According to that declaration, (Doc. No. 15-9, ¶ 1), Morrotta is the District Sales Manager for OfficeMax and has been employed by the company since 1992. She personally knew all three defendants and was John Steele's supervisor. (<u>Id.</u> ¶¶ 3, 5.) As a result of a reorganization

process, John Steele, along with others, was interviewed regarding continuing employment with the company. (Id. ¶ 6.) Since Steele was going on vacation in November 2009, Morrotta sought and obtained permission to inform him prior to the commencement of his trip that he would be offered continued employment with the company. Other employees in Steele's position had not yet been informed of the company's decision. (Id. ¶ 6 [sic].[1]) After returning from vacation on November 24, 2009, Steele resigned from the company. (Id. ¶ 8.) According to Morrotta, since Steele left the company OfficeMax has lost the following customers which he formerly serviced: Auburn Motor Sales, Mechanic Savings Bank, Franklin Memorial Hospital, and Androscoggin Home Health and Hospice, among others. (Id. ¶ 9.)

On August 20, 2010, OfficeMax, at the deposition of another witness, produced eighty-seven pages of previously undisclosed e-mails concerning the topics upon which Morrotta had been deposed. These documents had been requested in discovery in March 2010 and ordered produced by me on July 27, 2010, well prior to the scheduled deposition. There are two things about OfficeMax's belated disclosure that concern me. First is the tardiness. OfficeMax chalks that up to inadvertence (Response at 5, Doc. No. 132) and promises that it was not its intent to attempt to delay disclosing information. Those assertions are hard to swallow, given the progress of this case. Second is the fact that these materials are stamped "confidential," suggesting that they are entitled to protection under the terms of the consent confidentiality order signed in this case.[2] How can a chain of e-mails among employees concerning the procedures to follow vis-à-vis the very public termination of three employees be "confidential personal

---

[1]  There are two paragraphs numbered six in the Morrotta Declaration.

[2]  One flagrant example of this over-designation is the sealed exhibit at Doc. No. 133-4, an e-mail from someone in the "OM Workspace Department" concerning a fax from someone (perhaps Mr. Rider, Steele's attorney) concerning Steele's separation from the company and the associated e-mail within the company expressing that Deneen was developing a plan to secure Steele's laptop, blackberry and ID. The parties need to take a serious look at the items that have been designated "confidential" and filed under seal. Clearly items such as this e-mail are not entitled to that status.

information, trade secrets, personnel records, or commercial information"? (Consent Confidentiality Order ¶ 3, Doc. No. 36.) Furthermore, the attachments pertaining to contacts concern conversations between OfficeMax employees and third parties, hardly the stuff of trade secrets or commercial information that necessitate sealed filings. The filings related to this motion are simply emblematic of the over-designation of documents as confidential when they do not concern profit formulas, costs or other sorts of information that might arguably fall within the confidential designation.

Even though OfficeMax has not been responsive in meeting its discovery obligations in a timely or open fashion, reconvening a specific deposition without a showing of good cause is not an appropriate "punishment." The defendants have simply failed to make a persuasive showing as to how reopening Morrotta's deposition will necessarily provide them with the information they are actually seeking. The deposition excerpts submitted with the response to the motion seem to demonstrate a full opportunity to examine the witness. (Doc. No. 133-2.) The claimed discrepancies that arise between the testimony and the exhibits are just too subtle for me to understand and the defendants' most cogent explanation of why they want to reopen these depositions is not found in anything they provided to me regarding Morrotta. However, the defendants do make an excellent point in their reply:

> Only now has OfficeMax finally complied with its discovery obligations and this Court's Orders, and turned over the documents and other relevant information concerning its damages claims. Fairness dictates that Defendants should be able to depose a 30(b)(6) witness who has been fully prepared, in good faith, to answer questions concerning the Defendants' alleged solicitations of these 100 customers, the efforts (if any) made by OfficeMax to hold these customers, and the damages actually suffered by OfficeMax as a result of any loss of customers or sales to the Defendants. In addition, OfficeMax's 30(b)(6) witness must be prepared to testify concerning any evidence OfficeMax has that the Defendants used any confidential or proprietary information of OfficeMax to make these solicitations.

(Reply at 2, Doc. No. 136.)

3

It is not apparent to me, based upon the submissions I have received, that reopening the Morrotta deposition would necessarily meet that objective.

### *James Fuller*

Fuller, like Morrotta, supplied a declaration in support of the motion for preliminary injunction. (Doc. No. 15-11.) According to that affidavit, Fuller is OfficeMax's vice-president of sales. (Id. ¶ 1.) He also knows each of the defendants in this lawsuit. (Id. ¶ 3.) Fuller's affidavit tracks Morrotta's in terms of the description of the events surrounding Steele's November vacation, but he does add the detail that Sousa's employment terminated in October 2009 and that before termination he managed John Steele and after the termination it fell to Fuller to manage Steele. (Id. ¶ 4.)

Fuller was deposed on August 18, 2010, two days following Morrotta's deposition. Fuller was designated as a 30(b)(6) deponent on the topic of the reorganization process that led to making an offer of continued employment to Steele. Plaintiff has submitted an excerpt from the Fuller deposition (See Doc. No. 133-3) that suggests, based upon my read of the transcript, that Fuller was prepared to discuss the reorganization process and his dealings with Steele in relationship to the offer of a position. Other than referencing the e-mails that were untimely disclosed, the motion to reopen does not help the court to understand what Fuller could have testified about that he did not cover. The e-mails themselves do not contain an obvious "smoking gun" that would necessitate reopening a deposition. Defendants have likewise failed to convince me that this deposition should be reopened.

## *Thomas Polcaro*

The Polcaro deposition is the most troubling. Both sides accuse each other of misconduct and they have provided me with copies of the video deposition in order for me to assess who is at fault in this instance and what the remedy should be.[3] Long before Mr. Rider announced he was suspending the deposition and "taking it to the court" at page 179, there had been a great deal of back and forth over attorney client privilege. An example of the sort of back and forth and objections made by Mr. Flood and Ms. Hansen during the deposition includes the following:

> Thomas Polcaro 08/12/2010
>
> Page 39
> 19       MR. RIDER:  -- but particularly where I
> 20  have a corporate officer who authorized the filing
> 21  of this complaint. He already testified he read it.
> 22  My only question is whether these exhibits were
> 23  attached to the document when he read it.
> 24  Are you instructing him not to answer
> Page 40
> 1  that on privileged grounds?
> 2       MR. FLOOD:  I am. If it relates to
> 3  part of legal communications, what you were shown or
> 4  not shown by counsel in relation to the potential
> 5  filing of the complaint, I believe it's encompassed
> 6  within the attorney-client privilege, attorney work
> 7  product doctrine, and I would instruct not to answer
> 8  if that's the situation.

Mr. Polcaro was testifying as the Rule 30(b)(6) deponent with knowledge of the factual allegations set forth in the complaint, specifically as referenced in paragraphs 38-46 of the Notice of Deposition (Doc. No. 96-1.) When asked the preliminary question of whether he had read the exhibits attached to the complaint, Polcaro was instructed not to answer based on

---

[3]    Of course, both parties now want to assure me that the most telling part of the exchange was not recorded and they can each provide sworn accounts of who said what, when and why. (See Rider Aff., Doc. No. 136 & OfficeMax Surreply, Doc. No. 140.) I have essentially disregarded this portion of the dispute. I do not believe any of the three counsel, Mr. Rider, Mr. Flood, or Ms. Hansen, behaved in an exemplary fashion during this deposition or throughout the discovery phase of this litigation. I will leave it at that.

attorney client privilege. Clearly the question is a yes or no question. The exhibit is not privileged because it is part of the court record. I simply fail to see how asking the corporate deponent if he read the exhibit could possibly be privileged information.

On the other hand, it is important to note that the Polcaro deposition lasted from 9:58 a.m. until 5:06 p.m., with a normal break for lunch. The witness was prepared to answer many questions and did provide responsive answers. However, the bulk of the disputes arose when Mr. Rider tried to ask the witness for specific examples of customers his clients had allegedly visited or information his clients had allegedly divulged. Repeatedly the 30(b)(6) deponent invoked attorney/client privilege in response to these questions, indicating that his knowledge on that subject came from his conversations with counsel. This problem is symptomatic of the ongoing problem, summarized in the excerpt from defendants' reply memorandum which I included above. The problem is that OfficeMax failed, in a timely fashion, to provide the documentation regarding its damages claims and the acts of solicitation about which it was complaining. Defendants are entitled to have that information, as I have repeatedly ruled, and a deponent who was knowledgeable about that information, present for the Rule 30(b)(6) deposition. Reconvening any of these three depositions will not necessarily assure that defendants get the information they are entitled to have. Reconvening the Rule 30(b)(6) deposition and having someone there to answer these questions is more likely to produce the required result.

Because of OfficeMax's failure to provide the required information in a timely fashion, defendants' motion is granted in part. OfficeMax is ordered to produce a Rule 30(b)(6) deponent, or deponents, within the next two weeks, and in any event, not later than October 18, 2010, at a location convenient to Mr. Rider. The deponent(s) should be fully prepared, "in good

6

faith, to answer questions concerning the defendants' alleged solicitations of these 100 customers, the efforts (if any) made by OfficeMax to hold these customers, and the damages actually suffered by OfficeMax as a result of any loss of customers or sales to the defendants. In addition, OfficeMax's 30(b)(6) witness(es) must be prepared to testify concerning any evidence OfficeMax has that the defendants used any confidential or proprietary information of OfficeMax to make these solicitations." (Defs.' Reply Mem. at 2, Doc. 136.) The reconvened deposition shall last no longer than three hours. Counsel for the defendants is not to ask the witness about his conversations with counsel. Plaintiff's counsel is not to assert attorney/client privilege objections based upon the objection that the only thing the deponent knows about any of these subject matters is what counsel has told them. The subject matter is fair game and if the only persons with knowledge of this information within the OfficeMax hierarchy are counsel, then counsel might well be the necessary Rule 30(b)(6) deponent. By the same token, defendants' counsel is to refrain from phrasing questions in a format likely to require assertion of the privilege. For example: "Why did you say this in paragraph seven of your affidavit or in the complaint, paragraph thirty-nine?" Assertion of attorney/client privilege is not a timing mechanism that authorizes withholding relevant and discoverable information until trial. If OfficeMax has no evidence of solicitations, damages, efforts to maintain customers, or confidential information used by the defendants, then it will present no such evidence at trial. If it has such evidence, it will fully disclose it now.

## Conclusion

Based on the foregoing, the motion is granted in part and the defendants are given leave to reconvene OfficeMax's Rule 30(b)(6) deposition for the purposes discussed herein.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

September 28, 2010                    /s/ Margaret J. Kravchuk
                                                              U.S. Magistrate Judge